IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO: 2:09-cr-183-MHT |
| | ) | |
| WILLIAM WALTER OHORO | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

On November 18, 2009, Defendant William Walter Ohoro (Ohoro) was charged in a four-count indictment with violations of: (1) 18 U.S.C. § 922(g)(1); (2) 21 U.S.C. § 841(a)(1); (3) 21 U.S.C. § 844(a); and (4) 18 U.S.C. 924(c)(1)(A)(I).[1]  *See* (Doc. #1).  On January 20, 2010, Defendant filed a Motion to Suppress and For Return of Property.  (Doc. #36).  Accordingly, this court set a hearing on the motion for February 4, 2010.  *See* Order (Doc. #38).  On February 1, 2010, Ohoro filed a Motion to Continue the hearing based on new discovery, a possible superseding indictment, and to allow the parties time to consider resolving the case, thus avoiding "a superseding indictment with substantially more serious charges." *See* Motion to Continue (Doc. #39).  The court granted the Motion.  On February 18, 2010, Ohoro notified the court that he wished to proceed to a hearing on his Motion to Suppress.  *See* Notice (Doc. #42).  On February 22, 2010, the Government filed a Response to the Motion (Doc. #44) and on February 24, 2010, Ohoro was charged in a six-count Superseding Indictment, alleging violations of: (1) 18 U.S.C. § 922(g)(1); (2) four counts of 21 U.S.C. § 841(a)(1); and (3) 18 U.S.C. 924(c)(1)(A)(I).  *See* (Doc. #49).

---

[1] The Indictment also contains a forfeiture allegation.

On March 2, 2010, the court held a hearing on Defendant's Motion. Upon consideration of the Motion, the testimony at the evidentiary hearing, and the briefs, the undersigned RECOMMENDS the motion be DENIED.

## I.   BACKGROUND

Based on the parties' briefs and testimony at the hearing held on March 2, 2010, and to a preponderance of the evidence, the court finds as follows:[2]

On the morning of July 28, 2009, Captain Tijaun Jones (Captain Jones), a narcotics officer with the Autauga County Sheriff's Department, was changing out the video tape of a surveillance  camera that had been monitoring Ohoro's home.  The officer saw someone exit Ohoro's home, enter a Ford Explorer, and drive away.  Captain Jones had been monitoring Ohoro's house for a couple of weeks and found it unusual for someone to be leaving the residence at that time of the morning.  He finished changing out the video tape, secured the location of the camera, and got in his own unmarked police vehicle and attempted to locate the Ford Explorer.  He eventually located the vehicle traveling on a highway.

Captain Jones believed the Ford Explorer was traveling at a rate exceeding the posted speed limit of fifty-five miles per hour.  Captain Jones's vehicle was not equipped with a radar detection device, so in order to confirm his suspicion that the Ford Explorer was

---

[2] The Court reaches findings of fact at a suppression hearing based on a preponderance of the evidence.  *United States v. Beechum*, 582 F.2d 898, 913 n.16 (5th Cir. 1978) (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972)).

speeding, he began to "pace" the vehicle.  Officer Jones testified that "pacing" is a method used by police officers who are not equipped with radar equipment to determine the speed of a vehicle, and that he had received training in "pacing."  Using this method, he determined the Ford Explorer was traveling around seventy miles per hour.  He then called for a marked unit to initiate a traffic stop.  However, because he was unsuccessful in getting a marked unit to respond, he stopped the Ford Explorer.

When Captain Jones approached the vehicle, Ohoro, the driver of the vehicle rolled down the window.  Captain Jones smelled what he believed to be the odor of burnt marijuana emanating from the cockpit area of the vehicle.  Captain Jones asked Ohoro for his driver's license and proof of insurance.  Captain Jones then returned to his vehicle, ran Ohoro's driver's license and called for a canine unit to respond.

Within a few minutes, Captain James Steele (Captain Steele) of the Autauga County Sheriff's Department arrived with K9 Hobbs.  While sniffing around the vehicle K9 Hobbs alerted to the presence of narcotics.  The officers then searched the inside of Ohoro's vehicle and found a bag containing $4,400.00 in currency.  K9 Hobbs alerted to the presence of narcotics on both the bag and the cash.  Ohoro was asked why he was in possession of the cash and he responded that he was going to the bank and to buy groceries.  Ohoro was not arrested or placed into custody at that time.  Instead, the officers asked Ohoro if he would go with them to the police station.

At the station, Ohoro was advised of his *Miranda* rights and executed a written

waiver of the rights.  Ohoro then prepared and signed a written statement.  However, he refused consent to search his residence.  Officer Jones then sought and obtained a search warrant for Ohoro's residence, which was executed on July 28, 2009.  The search resulted in the seizure of over thirty pounds of marijuana, a quantity of methamphetamine, $15,000.00 in cash, and 17 firearms.

On July 29, 2009, and August 3, 2009, officers interviewed Ohoro.  At the outset of each interview, Ohoro was given a *Miranda* warning, and he executed a written waiver of his rights. During the interviews, he admitted his involvement in the possession and trafficking of marijuana, methamphetamine, and guns.  During the July 29, 2009, interview, Captain Jones discussed the possibility of executing a "memorandum of understanding" if Ohoro would cooperate with authorities.  No memorandum was executed as there was no agreement made regarding Ohoro's cooperation.  During the August 3, 2009, interview, Ohoro asked the officers if they had spoken to his brother regarding whether he had retained an attorney.  The officers told Ohoro that his brother had not. Ohoro then told the officers that if he had an attorney he would want that attorney present.  The officers told Ohoro that he did not have an attorney.  Ohoro then executed the written waiver of rights.

Ohoro was indicted in November of 2009 by a federal grand jury. *See* (Doc. #1).  On December 10, 2009, the United States Marshal's Service, along with officers from the Autauga County Sheriff's Office, executed an arrest warrant pursuant to the November indictment  The officers entered Ohoro's home and placed him in custody.  Upon entering

the home Captain Steele observed what he believed to be methamphetamine in an open desk drawer. Based on this, the officers obtained a second search warrant, which they executed later that day. The result of that search was the officers seizing approximately nineteen pounds of marijuana and more methamphetamine, which serve as the basis for the Superseding Indictment filed in February 2010.

## II.   DISCUSSION

Ohoro raises six arguments in support of suppression: (1) "The Stop and Search of Mr. Ohoro's Vehicle and the Detention of His Person Was Unconstitutional;" (2) "The Custodial Interrogation During the Stop Violated Mr. Ohoro's Fifth Amendment Rights;" (3) "The July 28, 2009, Search of Mr. Ohoro's Home Was Unconstitutional;" (4) "The Videotaped Statement by Mr. Ohoro on July 29, 2009, Was Illegally Obtained;" (5) "The Videotaped Statement by Mr. Ohoro on August 3, 2009 Was Illegally Obtained;" and (6) "The December 10, 2009, Search Was Unconstitutional." Def.'s Motion to Suppress (Doc. #36). The court will address each of these issues in turn.

### A.   The Stop and Search of the Vehicle.

First, Ohoro asserts that Captain Jones did not have probable cause to make a traffic stop. Specifically, Ohoro challenges the accuracy of the Officer Jones's determination that Ohoro was speeding, based on the fact that Captain Jones did not have a radar gun.

The Fourth Amendment dictates that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has

5

occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996).   Further, "the Fourth Amendment does not require the use of radar detection to establish probable cause to believe a motorist is speeding." *United States v. Monzon-Gomez*, 244 F. App'x 954, 959 (11th Cir. 2007).

At the hearing, Captain Jones testified that he "paced" Ohoro's vehicle to determine whether he was speeding.   The officer also testified that this was a method of establishing speed, for which he had been trained, and a method commonly used by law enforcement officers who are not equipped with radar detectors.   Moreover, Ohoro later admitted in his written statement that he was traveling at approximately seventy miles per hour.   *See* Def.'s Exhibit 13.   The court finds that Captain Jones did have probable cause to believe that Ohoro had committed a traffic violation and, that, therefore the stop of his vehicle was reasonable.[3]

Second, Ohoro argues that the traffic stop was unreasonably prolonged, because Captain Jones's claim to have smelled "burnt marijuana" was false.   Ohoro acknowledges that reasonable suspicion of criminal activity may allow an officer to prolong the detention of a vehicle, *see United States v. Simmons*, 172 F.3d 775, 778-79 (11th Cir. 1999), he merely argues that Captain Jones did not smell "burnt marijuana."

---

[3] Ohoro also argues that "[e]ven if it is determined that Captain Jones had a valid reason to conduct a traffic stop for speeding, Mr. Ohoro objects to that stop because it was a mere pretext to search his vehicle." Def's Brief (Doc. #36) at 8, n3. Ohoro then concedes "that this argument is precluded by *Whren v. United States*, 517 U.S. 806 (1996), but he reserves the argument for appeal, if necessary, to the United States Supreme Court." *Id*. The court therefore notes the reservation.

At the hearing, Captain Jones testified that he smelled what he believed to be "burnt marijuana" when Ohoro rolled down his vehicle window. The officer also testified that he had been trained in detecting the odor of marijuana. Ohoro did not offer testimony that there was no smell of burnt marijuana emanating from his vehicle. Instead, he attacks the reliability of the officer. Ohoro argues that the pretextual nature of the traffic stop provides "circumstantial evidence concerning the reliability of Officer Jones and his claim to have smelled marijuana." Def.'s Motion (Doc. #36) at 8, n.3. After hearing the testimony and reviewing the evidence, the court does not find the officer to be unreliable. Captain Jones had been monitoring Ohoro for suspected drug activities. While following Ohoro's vehicle, the officer observed Ohoro speeding and the officer made a traffic stop. The court finds nothing nefarious about this sequence of events.

It matters not that the subsequent search of the vehicle failed to reveal any evidence of marijuana. The officer testified that after observing Ohoro leave his house, enter his vehicle, and drive away, it took him several minutes to first secure the recording device near Ohoro's residence, then to regain sight of Ohoro's vehicle. Counsel for Ohoro established that the officer lost sight of Ohoro for a period of time and even questioned the officer as to the possibility that the vehicle could have stopped at a convenience store for a minute or two.[4] Thus, it is entirely possible that the item creating the smell of burnt marijuana was jettisoned from the vehicle prior to the stop. What matters is what the officer believed he

---

[4] Indeed, in Ohoro's written statement on July 28, 2009, he stated that he stopped at a convenience store to purchase a drink and cigarettes prior to being stopped. Def.'s Exhibit #13.

7

smelled at the time of the stop.  The court finds that the officer believed that he smelled burnt marijuana.  Thus, the officer had probable cause to search Ohoro's vehicle, *see United States v. Johns*, 469 U.S. 478, 482 (1985), and the court finds no constitutional violation in the stop and search.

**B.    Statements Made During the Stop.**

Ohoro argues that, because he was not free to leave during the search of his vehicle, he was in custody for *Miranda* purposes and, because he was not given a *Miranda* warning during the stop, "the statements he made in response to police questioning during this period must be suppressed." Def.'s Motion (Doc. #36) at 9.  Ohoro also moves for the suppression of any custodial statements during his "trip to the police station [ ]as well as any evidence discovered as a result of this unlawful detention."  *Id*.

The evidence at the hearing showed that when Captain Jones asked Ohoro about the large sum of currency found in the vehicle, Ohoro said that he was on his way to make a deposit and to buy groceries.  When Captain Jones asked Ohoro for consent to search his house, Ohoro stated that he did not think it appropriate.  When Ohoro was asked whether he would follow the officer to the station, Ohoro said yes.  These appear to be the only statements made during this time period and are, therefore, what Ohoro seeks to suppress.

The issue raised by Ohoro is whether he was entitled to a *Miranda* warning prior to any questioning.  As the Government correctly notes, generally, *Terry* stops are not "subject

to the dictates of *Miranda*." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984).[5]  However,

the "advice of *Miranda* rights is required if there is a restraint on freedom of movement 'of

the degree associated with a formal arrest.'" *United States v. Muegge,* 225 F.3d 1267, 1270

(11th Cir. 2000) (quoting *Minnesota. v. Murphy*, 465 U.S. 420, 430 (1984)).  In making this

determination, the court will look to the "totality of the circumstances." *United States v.

McDowell*, 250 F.3d 1354, 1362 (11th Cir. 2001). "The test is objective: the actual,

subjective beliefs of the defendant and the interviewing officer on whether the defendant was

free to leave are irrelevant." *United States v. Street*, 472 F.3d 1298, 1309 (11th Cir. 2006)

(quoting *United States v. Moya*, 74 F.3d 1117, 1119 (11th Cir. 1996)).  "Under the objective

standard, the reasonable person from whose perspective 'custody' is defined is a reasonable

innocent person. In applying this test there are several factors we are to consider, including

whether the officers brandished weapons, touched the suspect, or used language or a tone that

indicated that compliance with the officers could be compelled." *Id*. at 1309.

The undersigned finds that the objective factors in this case show that at the time

Captain Jones asked Ohoro about the large sum of currency, a reasonable innocent person

would not have believed their freedom was restrained to the degree associated with a formal

arrest.  Ohoro was not in handcuffs, nor was he placed in the police vehicle.  Ohoro denied

---

[5] "[A] seizure does not necessarily constitute custody for *Miranda* purposes. The standards are different. The Fourth Amendment seizure analysis uses the 'free to leave' test: a person is 'seized' when 'a reasonable person would [not] feel free to terminate the encounter' with the police. By contrast, a person is in 'custody' for *Miranda* purposes only when there is a 'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *United States v. Street*, 472 F.3d 1298, 1310 (11th Cir. 2006) (internal citations ommitted).

the request to search his home and agreed to drive his own vehicle to the police station.  In reviewing the totality of the circumstances, the court does not find that there was a restraint on the freedom of Ohoro's movement of the degree associated with a formal arrest. Therefore the dictates of *Miranda* did not apply.

**C.    The July 28, 2009, search of Ohoro's house.**

Ohoro challenges the July 28, 2009, search of his house, by challenging the search warrant issued and executed that day.  Ohoro claims: (1) "The Search Warrant Application Contained Information that Was Either False or in Reckless Disregard for the Truth;" (2) "The Warrant and the Affidavit to Support it Lacked Sufficient Probable Cause to Allow Reasonable Reliance;" (3) "The Warrant Relied on Information Gained From Prior Unconstitutional Conduct;" (4) "The Judicial Officer Issuing the Warrant Was Not Operating as a Neutral and Detached Judge;" and (5) "The Search Exceeded the Scope of the Warrant." The court will address each of these in turn.

**1.    Whether the Search Warrant Contained False Statements.**

Ohoro's allegations about intentional or reckless falsehoods by the officers obtaining the warrant bring this claim within the general ambit of the Supreme Court's *Franks*[6] jurisprudence.  Prior to the hearing, the court informed counsel for Ohoro that his request for a hearing on this issue was denied because he had not carried his *Franks* burden.  A Defendant carries a substantial burden in seeking to invalidate a warrant based on such

---

[6] *Franks v. Delaware*, 438 U.S. 154 (1978).

allegations:

> In order to be entitled to an evidentiary hearing on a motion to suppress based on alleged misrepresentations or omissions in a search warrant affidavit, a defendant must make a substantial preliminary showing that the affiant made false statements, either intentionally or with reckless disregard for the truth, pointing specifically to the portions of the affidavit claimed to be false, and that the false statements were necessary to the finding of probable cause.

*United States v. Kapordelis*, 569 F. 3d 1291, 1309 (11th Cir. 2009) (citing *Franks*, 438 U.S. at 171-72). Defendant has not met his burden in this case.

First, Ohoro claims that the officer "failed to include any information concerning the reliability of the confidential source or the informant's basis of knowledge." Def.'s Motion (Doc. #36) at 11. As Ohoro noted in his Motion:

> "If an informant is mentioned in the affidavit, the affidavit must also demonstrate the informant's veracity and basis of knowledge. However, when there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002) (internal quotations and citation omitted).

Motion (Doc. #36) at 11. In the affidavit, the officer states that the informant's basis of knowledge is his past drug dealings with Ohoro. The affidavit also states that the informant told the officers that Ohoro was a convicted felon who was in possession of firearms and gave the officers the correct address of Ohoro's residence. The officer then states that he confirmed the fact that Ohoro was a convicted felon through a check of the NCIC, which revealed that Ohoro had numerous felony convictions. Further, the officer stated in the affidavit that he observed the smell of burnt marijuana emanating from Ohoro's vehicle.

11

Thus, the affidavit demonstrates the basis of the informant's knowledge, and contained independent corroboration of the informant's information. *See Martin,* 297 F.3d at 1314. (finding police verification that informant had stolen weapons to be sold to defendant to be sufficient police corroboration).

Second, Ohoro cites to the officer's failure to include information in the affidavit concerning the two-week surveillance the officer had been conducting on Ohoro's residence. Ohoro maintains that the officer should have included the surveillance information in the affidavit, and specifically, that the video recordings did not show criminal activity.

However, in this case, the fact that the officer had been conducting surveillance was neither material or essential to the finding of probable cause. Even assuming the affidavit had contained information about the surveillance, the informant's information was that there were drugs being sold and/or concealed at Ohoro's residence and that Ohoro possessed guns at the residence. It is unlikely that the surveillance video camera would have been able to corroborate that there were drugs and guns concealed within the residence. Thus, the fact that the videos may not have shown criminal activity is immaterial.

The same analysis applies to Ohoro's third contention - that the officer was required to include Ohoro's explanation for the currency found in his vehicle. Ohoro's explanation was not material information. As the government correctly notes, this was a self-serving explanation. *See United States v. Sarras*, 575 F.3d 1191, 1219 (11 Cir. 2009) ("A self-serving denial, on its own, does not defeat probable cause."). The officer was not required

to investigate Ohoro's "alternate explanation for having a large sum of money," nor was he required to list it in the affidavit.  The omission of this information falls well short of any significance for *Franks* purposes.

Fourth, Ohoro takes exception to the Officer's statement that "while on patrol contact was made with William Ohoro for speeding."  Ohoro argues that this statement is untrue because: (1) the officer was survelling Ohoro's residence that morning; and (2) the officer had followed Ohoro for nearly fifteen miles prior to stopping his vehicle. Def.'s Motion (Doc. #36) at 14.   Ohoro then argues that this information relates to the veracity of the officer's claim to have smelled marijuana, because "with respect to a driver followed for miles by that officer—a person whom that officer *is already investigating for marijuana-related charges*. [ ] [T]he officer has an interest in stating that he detected marijuana—and perhaps even a subconscious expectation to smell it."  *Id*.

It appears Ohoro would have the court infer "on patrol" to mean something related to traffic duty or something of the kind.  However, as Captain Jones stated several times in the affidavit, he is a narcotics officer.  As the government stated in its brief, part of Captain Jones's "routine patrol" was to change the video tape in the surveillance camera near Ohoro's home.   Again, this is not a false statement and Ohoro has not met his *Franks* burden.  Moreover, Ohoro makes nothing more than a mere allegation regarding how long he was followed and speculates as to what relevance, including the subconscious expectation to smell marijuana, it might have.  *Franks* requires more.

13

Fifth, Ohoro merely states that his vehicle did not smell of marijuana.  Thus, Ohoro implies that the officer lied when he stated that he smelled burning marijuana.  This statement falls well short of the *Franks* requirement that Ohoro provide a "substantial preliminary showing" prior to a hearing on his claims.

In sum, it appears Ohoro's allegations are merely speculation.  However, *Franks* requires much more prior to a hearing on the claim.  *See Kapordelis*, 569 F. 3d at 1309. Accordingly, the court denied Ohoro's request for a hearing on this issue and his motion for suppression based on this issue is due to be denied.

### 2.    *Whether the warrant contained sufficient probable cause.*

Ohoro argues that the affidavit "was insufficient to establish that drugs would probably be found at [his] home." Def.'s Motion (Doc. #36) at 15.  In support of his argument, Ohoro revisits several issued addressed above.  Ohoro claims that: (1) the affidavit relies on a confidential informant and that there is no statement regarding his or her reliability; (2) "there is no information at all concerning the circumstances of the anonymous information;" (3) "[t]here is no independent police corroboration of any of the serious allegations of the informant;" (4) "[t]here is no basis for the judicial officer to determine the source was reliable;"[7] (5) "[t]he affidavit's language suffers from myriad additional failures;"[8] (6) "[t]he anonymous source never stated that Mr. Ohoro sold drugs *from his home*

---

[7] These first four issues were addressed above.

[8] Here, Ohoro argues the information from the informant was not fresh, stating that: "[a]lthough the affidavit states that the police *received* the information "within the past two weeks," the anonymous

and merely vaguely asserts that, at some time in the past, [he] had sold drugs;"[9] (7) "[w]hile

the source also states that Mr. Ohoro illegally possessed guns at the home, the warrant issued

by the state-court judge does not mention firearms and, even the existence of firearms at a

home—particularly a rural home in Alabama—hardly provides cause to believe that drugs

will probably be found there;"[10] (8) the affidavit failed "to provide credible information that

2837 River Bend Road was []Ohoro's address. The only support for that assertion was the

confidential source. Officers did not even indicate to the judicial officer that this basic

information had been corroborated;"[11] (9) "[t]he affidavit provided no connection between

that residence and illegal narcotics;"[12] (10) the affidavit failed to mention that Ohoro's house

had been under surveillance;[13] (11) that "[a]lthough the informant's information in this case

---

source cited as support merely states that "Walter Ohoro has sold Marijuana and Methamphetamine to them *in the past*." Def.'s Motion (Doc. #36) at 16. This interesting spin on the language of the affidavit ignores the fact that the officer smelled burnt marijuana emanating from Ohoro's car, corroborating the freshness of the information.

[9] Actually, the affidavit states that the officers had received information that there were drugs being sold and/or concealed at Ohoro's residence and that the source of the information was the confidential source.

[10] Regardless of Ohoro's assertions regarding the contents of rural Alabama homes, Ohoro's argument ignores the fact that the affidavit, which Ohoro is attacking in this claim, clearly provides a basis for the illegality of the firearms and lists illegally maintained firearms as a basis for probable cause.

[11] Actually, in the second paragraph of the affidavit, the officer goes to great length describing directions to Ohoro's residence, providing detailed information about the exterior of the home, including on which side of the street it sits, and states that it "is clearly identified by this affiant and is the residence of []Ohoro." *See* Exhibit #15.

[12] Actually, as stated in n.8, the affidavit does provide such a link.

[13] This issue was addressed above.

15

provided essentially no detail, officers were not able to corroborate even the basic details of the source's information as it related to illegal drug activity;"[14] (12)  and that [t]he information provided in the affidavit concerning the traffic stop of []Ohoro cannot reasonably establish probable cause."[15]  *See* Def.'s Motion (Doc. #36) at 15-23.

Thus, Ohoro would have this court parse out the affidavit line by line.  However, a court will find "probable cause exists to support a search warrant when the totality of the circumstances indicates that there is a fair probability of discovering contraband."  *United States v. Anton*, 546 F.3d 1355, 1358 (11th Cir. 2008).  Probable cause "is a fluid concept - turning on the assessment of probabilities in particular factual contexts."  *Brundidge*, 170 F.3d at 1352.

---

[14] Ohoro seeks to impose burdens on police corroboration at a level much higher than the law requires.  Ohoro even complains that although the police corroborated Ohoro's past convictions, the affidavit failed to include the *age* of the convictions.  Officers are not required to provide this level of corroboration.  *See e.g. Martin*, 297 F.3d at 1314-15 (where police verified informants claim to have stolen weapons).  Further, under a "totality of the circumstances test, the 'veracity' and 'basis of knowledge' prongs . . . for assessing the usefulness of an informant's tips, are not independent. '[T]hey are better understood as relevant considerations in the totality of the circumstances analysis that traditionally has guided probable cause  determinations: a deficiency in one may be compensated for . . . by a strong showing as to the other[.]"  *United States v. Brundidge*, 170 F.3d 1350, 1352-53 (11th Cir.1999).

[15] Here Ohoro claims that the fact that he was carrying large amounts of cash was not criminal and that the dog alerting to the cash was of no consequence because "it has long been common knowledge that the vast majority of currency in circulation in this country contains residue of illegal narcotics."  Def.'s Motion (Doc. #36) at 21.  Ohoro then attacks the validity of drug-dog alerts.  This seems an inconsistent argument, to first acknowledge that most currency contains drug residue, then argue that drug dogs are unreliable when a drug dog alerts to a large amount of cash.  The Magistrate was aware that no drugs were found in the vehicle, but he was also aware that the officer smelled burnt marijuana emanating from Ohoro's vehicle.  Thus, even were the court to determine that the drug dog was unreliable, which it does not, in looking at the totality of circumstances, the court would still determine that there was probable cause for the issuance of the warrant.

The court has reviewed the affidavit and has determined that there was a reasonable basis for the issuing Magistrate to determine probable cause existed. The affidavit set forth that a confidential source had informed officers that illegal narcotics were being sold and/or concealed at the residence and that the informant had bought narcotics from Ohoro in the past. The affidavit sets forth the informant's information that guns were illegally being maintained at Ohoro's residence. The affidavit sets forth the officer's corroboration of the informant's information regarding Ohoro's criminal record and his address, as well as sets forth the officer's detection of burnt marijuana emanating from Ohoro's vehicle. The affidavit also informed the Magistrate that Ohoro had been found to be in possession of a large amount of currency and that a drug dog had alerted positively to the bag containing the currency and the currency itself. Thus, this court is satisfied that in viewing the totality of the circumstances, "the magistrate had a 'substantial basis ... for conclud[ing]' that probable cause existed." *Illinois v. Gates*, 462 U.S. at 2330-2331.

Further, even were the court to conclude that the underlying search warrant lacked probable cause, the "good faith exception to the exclusionary rule" would apply. *United States v. Leon*, 468 U.S. 897 (1984). In *Leon*, the Supreme Court held that if the officers reasonably relied on a search warrant that was later invalidated, the court would not exclude evidence obtained through the search warrant. *Id*. at 922. Ohoro asserts that the *Leon* good faith exception does not apply, claiming that, in addition to the lack of probable cause, there

are two other basis to limit the application of the *Leon* exception in this case.[16]   Ohoro states that the *Leon* exception does not apply because information was knowingly or recklessly omitted from the warrant and because the judicial officer issuing the warrant was not operating as a neutral and detached judge.   The court has addressed the contention that the information in the affidavit was knowingly or recklessly omitted from the warrant and will address the claim regarding the issuing judicial officer below.   The court does not find that these limitations apply.

### 3.   *Whether the warrant relied on prior illegal conduct.*

Here, Ohoro argues that "[t]he warrant obtained by officers must be invalidated also because it relied on information obtained as the result of violations of [his] constitutional rights."   This is based on his assertion that the stop, search, and detention in this case were performed in violation of the Constitution.   As the court has found there to be no constitutional violation, there is no basis for this claim.

---

[16]   The good faith exception  applies in all but four circumstances:

(1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role [...]; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient-i.e., in failing to particularize the place to be searched or the things to be seized-that the executing officers cannot reasonably presume it to be valid.

*Martin*, 297 F.3d at 1313 (quotations and citation omitted).

### 4.    *Whether the Judicial Officer wholly abandoned his role.*

Ohoro's only argument in support of his assertion that the judicial officer issuing the warrant was not operating as a neutral and detached judge, is that "[a] judicial officer acting as a neutral judge of the facts could not have found that probable cause existed to issue the warrant on July 28." Def.'s Motion (Doc. #36) at 24. Because this court has determined that probable cause did exist to issue a warrant, the undersigned can not find that such a determination is evidence that "the issuing magistrate wholly abandoned his judicial role in the manner condemned in' *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 [] (1979)." *Martin*, 297 F.3d at 1313.

### 5.    *Whether the search exceeded the scope of the warrant.*

Ohoro argues that the search of his residence exceeded the scope of the warrant because it did not mention firearms and because "officers took many other items from Mr. Ohoro's residence, including many non-drug related items." Def.'s Motion (Doc. #36) at 29. As to the firearms, Ohoro argues that, because the warrant makes no mention of firearms, "any search of firearm safes or other visibly marked firearms packaging exceeded the scope of the search." *Id*. Ohoro concedes that the warrant allowed the officers to search for controlled substance, other illegal drug/narcotics paraphernalia, or other drug related items.

"[A] search may be extensive as reasonably necessary as required to locate the items described in the warrant." *United States v. Jackson,* 120 F.3d 1226, 1228 (11th Cir. 1997). Thus, Ohoro argues that it was unreasonable for the officers to search for illegal narcotics

in a firearm safe or a visibly marked firearms package.  The court does not agree.

> Where a warrant has been issued, a lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. This court has held that a warrant to search a specific area for a certain class of things authorizes government agents to break open locked containers which may contain the objects of the search.

*United States v. Martinez*, 949 F.2d 1117, 1120 (11th Cir. 1992) (internal citations omitted);

*see also United States v. Edwards,* 343 F. App'x 468 (11th Cir. 2009) (officers authorized

to search for weapons did not exceed scope by searching in locked safe).

As to any other items, Ohoro did not specify what those items might be.  The warrant

allowed for the seizure of illegal narcotics, drug paraphernalia and any other drug related

items.  The court does not agree that the seizure exceeded this scope.

**D.    The Videotaped Statement of July 29, 2009.**

Ohoro argues that the statements he made to the officers while in custody "were not

knowing, intelligent, and voluntary because they were made only after improper promises

and suggestions by Captain Jones."  Def.'s Motion (Doc. #26) at 25.  Prior to making the

statements Ohoro seeks to suppress, Ohoro was given a *Miranda* warning.  He also executed

a written waiver of his rights.

The conversation in question occurred when Ohoro and the officer were discussing

the possibility of a cooperation agreement.  Ohoro asked the officer how an agreement would

help him and the officer indicated that it might result in a lesser sentence should the case be

prosecuted federally.

20

Ohoro relies on *United States v. Mercer*, 541 F.3d 1070, 1075 (11th Cir. 2008) (*quoting Bell v. Alabama*, 367 F.2d 243, 247 (5th Cir.1966), for the proposition that "[a] statement is not voluntary if it is 'obtained by any direct or implied promises, however slight . . . .'"  However, the very next paragraph in *Mercer* reads:

> The district court properly concluded that Defendant's statements to the ABI agent were voluntary. Construing the facts in the light most favorable to the government, nothing in the record evidences that anyone made promises to Defendant, direct or implied, in exchange for his statements.[] Even if the ABI agent approached Defendant about the possibility of a cooperation agreement, that alone does not make Defendant's statements involuntary.  *United States v. Davidson*, 768 F.2d 1266, 1271 (11th Cir.1985)  ("A statement made by a law enforcement agent to an accused that the accused's cooperation would be passed on to judicial authorities and would probably be helpful to him is not a sufficient inducement so as to render a subsequent incriminating statement involuntary.").

*Id.* at 1075-76.  Similarly, there is nothing in this record to indicate that Ohoro was made any promises.  The officer answered Ohoro's question regarding how an agreement might benefit him.  The officer even informed Ohoro that any agreement would be preceded by a memorandum of understanding, and yet, no memorandum was issued.

Ohoro also complains that the officer's comment that any statements made by Ohoro would stay between Ohoro and the officer.  The context for this statement was that it was also made while the officer was discussing a possible cooperation agreement. Ohoro told the officer that he would like to help but, that there was not a whole lot he could do while he was in custody.  The officer says that he would like to get a witness present for their discussions, then told Ohoro that whatever he says "stays here." Evincing his awareness and

21

understanding of his Miranda rights, "Ohoro questioned [Officer] Jones on the apparent inconsistency of that comment with the rights form he had just seen." Def.'s Motion (Doc. #36) at 26. Ohoro actually states that "according to what I just signed what I say can and will be used against me." Exhibit #10 at 13. Captain Jones then clarifies and says: "Well, what I'm saying to you: To further our case, we're not gonna go out here and tell the bad guys you're giving us information." *Id*. Clearly, his statement relating to what "stays here" was in the context of Ohoro telling the officer: "I can help you as much as I can . . . [] but while I'm in here, you know, there's not a whole lot I can do." The officer merely sought to assure Ohoro that if he cooperates, his cooperation would remain confidential from the "bad guys." This is further evidenced by the officer then warning Ohoro that, if he becomes a confidential source, he may still have to testify.

This conversation clearly demonstrates that Ohoro was fully aware of his rights and that his decision to make any statements was done knowingly, or intelligently, and voluntarily.

### E.     The August 3, 2009, Statement.

Ohoro argues that his "indicat[ion] that he would like to have an attorney present if he had one," should have ended any questioning by the officers. Def.'s Brief (Doc. #36) at 27. Thus, Ohoro asserts that any statements made after such "indication" should be suppressed. The government argues that *Miranda* was not violated because the request for counsel was ambiguous.

22

The Supreme Court stated in *Miranda* that if a defendant "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." 384 U.S. 436 at 444-45. Later, in *Davis v. United States*, 512 U.S. 452, 459 (1994), the Supreme Court clarified that:

> Invocation of the *Miranda* right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *McNeil v. Wisconsin*, 501 U.S., at 178, 111 S.Ct., at 2209. But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning. *See ibid.* ("[T]he likelihood that a suspect would wish counsel to be present is not the test for applicability of Edwards"); *Edwards v. Arizona*, supra, 451 U.S., at 485, 101 S.Ct., at 1885 (impermissible for authorities "to reinterrogate an accused in custody if he has clearly asserted his right to counsel") (emphasis added).
>
> Rather, the suspect must unambiguously request counsel. As we have observed, "a statement either is such an assertion of the right to counsel or it is not." *Smith v. Illinois*, 469 U.S., at 97-98, 105 S.Ct., at 494 (brackets and internal quotation marks omitted). Although a suspect need not "speak with the discrimination of an Oxford don," post, at 2364 (SOUTER, J., concurring in judgment), he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, *Edwards* does not require that the officers stop questioning the suspect.

The interview started with an officer reading Ohoro his rights and asking him if he understood those rights. Next, the following exchange took place:

> Defendant: "Yeah. I think you say you talked with my brother; has he hired an attorney yet?"
> Deputy Jones: "Let's just fill this out first, then we'll go with that."
> Defendant: "All right, well–I mean, it's–say, if I've got an attorney, I'd like him to

be here. I just –."
Deputy Jones: "–no, you do not have an attorney at this point—."
Defendant: "Okay, I mean –."
Deputy Jones: "He just want to know bond–bond amounts."

*See* Exhibit #11.  An officer and Ohoro then discussed the bond issue and Ohoro executed

his waiver of rights form, initialing each provision, and signing the document.[17]

The issue is whether Ohoro's question about whether his brother had hired an attorney

yet, and his statement that if he has a lawyer he would like him to be present, were

unambiguous requests for counsel.  Ohoro does not claim that the officers lied to or misled

him as to whether his brother had retained counsel on his behalf, or, whether he had an

attorney.

The court does find that, at most, "a reasonable officer in light of the circumstances

would have understood only that [Ohoro] *might* be invoking the right to counsel." Davis, 512

U.S. at 452.   Thus, the officers were not required to cease questioning. *Compare Id*.

(ambiguity found in "maybe I should talk to a lawyer);" *see also, Valle v. Secretary for the*

*Department of Corrections*, 459 F.3d 1206, 1213-1215 (11th Cir. 2006); *United States v.*

*Tran*, 171 F. App'x 758, 761 (11th Cir. 2006); *Mincey v. Head*, 206 F.3d 1106, 1132 (11th

Cir. 2000).  As the Supreme Court said in *Davis*, "a statement either is such an assertion of

the right to counsel or it is not."  *Id*. at 459 (*citing Smith v. Illinois*, 469 U.S. 91, 97-98

(1984).  Ohoro's question as to whether his brother had retained an attorney for Ohoro, and

---

[17] The subsequent signing of the rights waiver would not cure an unambiguous request for counsel, unless the questioning had ceased and Ohoro had initiated further contact.  *See Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).

his statement that *if* he had a lawyer he would like him present, is not an unambiguous request for counsel, and *Davis* makes it clear that the officers had no obligation to clarify Ohoro's statement.[18]

### F.    The December 10, 2009, Search.

Ohoro argues that the December 10, 2009, search of his home was unconstitutional, because it was made as a direct result of the constitutional violations he asserts above. The December 10, 2009, search of Ohoro's home stemmed from a result of the United States Marshal's Service, along with officers from the Autauga County Sheriff's Department, execution of an arrest warrant pursuant to the original indictment filed in this case. *See* (Doc. #1). The officers entered Ohoro's home and placed Ohoro in custody. Upon entering the home Captain Steele observed what he believed to be methamphetamine in an open desk drawer, in plain view. Based on this, the officers obtained a second search warrant, which they executed later that day. Ohoro alleges that the methamphetamine found in the desk was not in plain view.

The court heard the testimony of Captain Steele and finds it to be reliable. Further, the court has found there to be no constitutional violation in the events preceding the execution of the arrest warrant, which could have tainted the search. Accordingly the court finds that the December 10, 2009, search of Ohoro's residence was lawful.

---

[18] *See Coleman v. Singletary*, 30 F.3d 1420 (11th Cir. 1994) (recognizing that *Davis* overturned prior Circuit precedent requiring officers to clarify equivocal invocations of counsel).

## III.   CONCLUSION

Accordingly, for the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that the Motion to Suppress (Doc. #36) be DENIED.  It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before April 26, 2010**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 12th day of April, 2010.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE